## Anthony v. Paxton National Insurance Company

*Barbara L. Smith,* for plaintiff.
*John M. McLaughlin,* for defendant.

WOLFE, *P.J.,* May 14, 1987—Plaintiff seeks Pennsylvania no-fault benefits in this suit against his carrier, defendant herein, by reason of an injury plaintiff sustained on February 28, 1983.

Plaintiff's complaint alleges while he was entering into the insured motor vehicle his foot slipped

on the fuel tank and he fell between the frame of the vehicle and the fuel tank, injuring his back. Plaintiff alleges he was not immediately aware that his loss was covered by the Pennsylvania No-fault Motor Vehicle Insurance Act (repealed) and therefore did not until May 29, 1985, give notice to defendant requesting the no-fault benefits. Defendant denied plaintiff's claim on August 6, 1985, and on March 20, 1986, the complaint for benefits was filed.

On May 2, 1985, plaintiff applied for workers' compensation benefits against his employer's carrier, and he subsequently received monthly compensation payments of $1,060.80 on February 3, 1987.

Plaintiff, by this action, requests recovery for his work loss to the extent he was not reimbursed by workers' compensation. Plaintiff's brief in support of his claim is for work-loss benefits in the amount of $15,000 incurred on and after March 20, 1984, relinquishing his claim for medical expenses incurred prior to February 28, 1985, because these have been reimbursed through workers' compensation benefits and, finally, attorney fees for services rendered from March 20, 1984, because of the unreasonable denial of defendant in awarding the benefits due.

Defendant filed its motion for partial summary judgment based on its affirmative defense of the statute of limitations. Defendant argues plaintiff's claim is untimely as his action was not commenced within two years after his accrued work loss equaled the maximum amount recoverable of $15,000. Defendant also argues plaintiff's medical expenses are partially barred for those amounts of services rendered in excess of two years before March 20, 1986.

Plaintiff's average gross work loss as he calculates it, commencing on the basis of one month before the accident, to-wit, January 1983, is $531.93,

which is composed of workers' compensation benefits of $244.80 or, exclusive of workers' compensation, a net work loss of $287.13 per week. On this calculation plaintiff claims his accrued work loss reached $15,000 on May 1, 1984; and therefore the action commenced on March 20, 1986, was timely. In reaching the maximum awardable of $15,000 the average gross weekly wage of $531.93 was used, excluding the workers' compensation benefits received, or a net work loss of $287.13. The latter amount we interpret to be plaintiff's weekly income from his employment. Dividing this amount into $15,000 results in 181 weeks, or 3.48 years, necessitating the complaint to be filed not later than August 1986. Thus, according to plaintiff, the complaint filed on March 20, 1986, is timely.

Defendant argues plaintiff's weekly wage from March 1, 1983, through December 31, 1986, was $531.93, thereby accepting plaintiff's calculation of his wage loss; however, including the workers' compensation benefits, and as defendant calculates the loss to arrive at the maximum benefits receivable is to divide $15,000 by $531.93 with the result of rounding the amount to 29 weeks of lost wages, times $531.93 equals $15,425.97 or the statute of limitations expiring against plaintiff on September 20, 1983. Thus, defendant concludes since the complaint was not filed until March 20, 1986, there is no defense liability.

In view of the parties' respective positions concerning the component of workers' compensation received by plaintiff in determining his loss, this becomes a critical determination. In *Motley v. State Farm Mutual Insurance Company*, 502 Pa. 335, 466 A.2d 609 (1982), the court settled this issue. There, the injured plaintiff received a weekly workers' compensation benefit from his employer, the

city of Pittsburgh. Plaintiff's claim against state Farm Insurance Company was for payment of wage-loss benefits to reimburse him for his wage loss over and above the amount he received for workers' compensation. The Superior Court found State Farm Insurance was liable under the policy for no-fault benefits despite its claim any wage-loss benefits due plaintiff must be paid by his employer. As the case progressed to the Supreme Court, it formed the issue whether in the payment of work-loss benefits the no-fault insurance carrier is liable for the difference between workers' compensation benefits received and actual wages or "the difference between workers' compensation benefits and the maximum work-loss benefits provided by the No-fault Act. The court specifically addressed section 1009.206(a) of the act which excludes the receipt of workers' compensation in calculating net loss. The court holding:

"We hold that where an injured claimant is receiving workers' compensation benefits, excess no-fault work-loss benefits are to be computed by deducting the workers' compensation benefits from the insured's actual wage, the difference being the benefits to which he is entitled. Section 1009.202(b) of the No-fault Act limits the amount of the work-loss benefits which the insurance company will be required to pay. *It does not establish a cap on the total sum of lost wage benefits an insured may collect from all sources.* (emphasis added.)

The court further acknowledged in footnote 7 of its opinion under section 206(b) of the No-fault Act, the wage-loss payments to the insured must be adjusted to take into consideration the tax advantage which accrued to the claimant. Thus, the court in *Motley* makes it crystal clear that an injured em-

ployee's receipt from Social Security or workers' compensation or any other state-required, temporary, nonoccupational disability insurance and other benefits shall be subtracted from loss in calculating net loss.

We therefore conclude defendant's method of including plaintiff's workers' compensation benefits in the instant case is in error for determining the running of two-year period.

Defendant's argument that plaintiff's calculation must be on the basis of his gross loss in correct; however, defendant does not correctly interpret the holding of *Miller, v. Prudential Property and Casualty Insurance Company,* 344 Pa. Super. 28, 495 A.2d 973 (1985). In *Miller,* the court, following the holding of *Kamperis v. Nationwide Insurance Company,* 503 Pa. 536, 469 A.2d 1382 (1983), resolved the component of calculation of whether it should be done on gross income analysis or a net income analysis and held the former controlling. In *Miller* the injured plaintiff received no workers' compensation benefits. There, defendant argued plaintiff's claim should be calculated over a period of time based upon plaintiff's gross income (prior to injury), whereas plaintiff argued his work loss should be calculated on the basis of his net income. In affirming the lower court's entry of summary judgment in favor of defendant insurance carrier, the Superior Court followed the same reasoning of the trial court that "a straightforward reading of the act mandated use of a gross income analysis."

In the case sub judice we conclude defendant is equating the receipt of workers' compensation as earned income, which we have seen by the holding of *Motley,* supra, is not. Work-loss benefits is not synonymous with work loss; however, work-loss benefits must be considered in fixing the amount

payable to the injured employee, that is the carrier is entitled to deduct the amount of workers' compensation benefits paid from the employee's actual wage. (See *Motley,* supra.) Thus, in determining that the statute of limitations must be based upon the injured employee's gross income as contra to his net income, the court is addressing earned income which prompted it again to make the comment it was not dealing with workers' compensation benefits and cited *Motley v. State Farm Insurance Company,* supra, was not on point.

Our analysis is further corroborated by *Kamperis v. Nationwide Insurance Company,* supra, where the court determined when a timely action must be initiated. The court held it must be initiated as the act provides, not less than two years after the victim suffers the loss. The court resolved this phrase, "suffers the loss," meaning not when the injury occurs but as *work* loss is sustained. The court then held:

"The pertinent provisions of the Act define 'work loss' in the case of a victim who is not self-employed as 'loss of gross income'. . . . The plain meaning of the act is clear; work loss is economic detriment resulting from inability to work and earn a living, e.g., loss of a paycheck. In the case at bar, where the victim was gainfully employed but not self-employed prior to his death, the victim suffered the work loss on the date he could next have expected to receive his regular pay for work he would ordinarily have performed in due course, but for the accident."

Finally, in *Augostine v. Penn National Mutual Casualty Insurance Company,* 338 Pa. Super. 15, 487 A.2d 828 (1984), wherein the injured employee had received workers' compensation, the time period of two years must be calculated exclusive of workers' compensation benefits.

We therefore conclude defendant's motion for partial summary judgment must be denied and hold plaintiff's action was timely filed.

Next, plaintiff voluntarily relinquishes his claim for medical expenses incurred prior to February 28, 1985, because of reimbursement through workers' compensation benefits; however, defendant will be compelled to pay those medical expenses incurred timely within the act.

Plaintiff claims reasonable attorney fees for services rendered to him from March 20, 1984, by reason of defendant's unreasonable refusal to honor his claim. According to the complaint defendant issued the policy to plaintiff on or about July 7, 1982. On May 29, 1985, plaintiff, through his counsel, gave notice to defendant by submitting an application for benefits and supporting medical bills. On August 6, 1985, defendant denied plaintiff's claim. By letter of August 6, 1985, defendant company replied through its claims supervisor, Nancy L. McAfee. This letter makes it clear plaintiff's counsel had submitted cases to plaintiff's carrier to support his claim. The response of Nancy L. McAfee in part, after denying the claim, is:

"I would suggest that you take a second look at the case law you cited to us in your letter of June 24, 1985. The law is clear in upholding the two-year statute. We must respectfully deny your claim."

At that time, August 6, 1985, the string of cases cited in this opinion were published, to-wit, *Motley* in 1983, *Miller* in May 1985, *Kamperis* in December 1983 and *Augostine* in December 1984.

We can only conclude defendant, through its counsel or other personnel handling the claim, made no reasonable research of the law despite the fact the law was delivered to it by plaintiff's counsel. In this case we have no hesitation in finding defen-

ant acted capriciously and arbitrarily and put plaintiff to the expense of pursuing a valid claim, and we therefore enter the following

## ORDER

And now, this May 14, 1987, defendant's motion for partial summary judgment is denied.

Defendant shall pay plaintiff's reasonable counsel fees for services rendered in this case.